AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**

APR **16** 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                   DEPUTY

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    **18MJ1789** |
| | ) | |
| One Black LG Smartphone | ) | |
| Model LG-VS425LPP | ) | |
| SN: 712VTNV1982103 | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(2)(B)(iii) | Bringing in Aliens without Presentation |
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |
| 8 U.S.C. § 1324(a)(2)(B)(ii) | Bringing in for Financial Gain |

The application is based on these facts:

See Attached

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lucas C. Waters, U.S. Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **4|16|2018**

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*

1  **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION**

2    I, Lucas C. Waters, an Agent with the United States Border Patrol (USBP), having

3  been duly sworn, hereby depose and state as follows:

4  **INTRODUCTION**

5    1.    This affidavit is made in support of an application for a warrant to search the

6  following:

7    a.    **One (1) Black Samsung Smartphone**
       Model: SM-G550T1
8       SN: 354151/08/385854/1
9       (hereinafter referred to individually as **Target Telephone 1**)

10    b.    **One Black LG Smartphone**
       Model LG-VS425LPP
11       SN: 712VTNV1982103
12       (hereinafter referred to individually as **Target Telephone 2**)

13
14  as further described in Attachment A and hereinafter referred to cumulatively as the

15  **Target Telephones**, which are currently in the possession of Customs and Border

16  Protection, Asset Forfeiture Office, 3752 Veyer Blvd., San Ysidro, CA 92173, within the

17  Southern District of California, and to seize evidence of violations of federal law, namely

18  8 U.S.C. § 1324, as set forth in Attachment B.

19    2.    The **Target Telephones** were seized from Francisco FERNANDEZ

20  ("FERNANDEZ") on February 7, 2018, at the time of his arrest within the Southern

21  District of California for transportation of certain aliens.

22    3.    Based on the information below, there is probable cause to believe that a

23  search of the **Target Telephones** will produce evidence of the aforementioned crimes, as

24  described in Attachment B.

25    4.    The information contained in this affidavit is based upon my experience and

26  training, and consultation with other federal, state, and local law enforcement agents.

27  Because this affidavit is made for the limited purpose of obtaining a search warrant for the

28  **Target Telephones**, it does not contain all of the information known by me or other federal

agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.     I am currently employed as a Border Patrol Agent (BPA) with USBP and have been so employed since February 18, 2008. I am a graduate of the USBP Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure. As a result of my training and experience as a BPA, I am familiar with federal criminal and immigration laws. My primary duties as a BPA have been the enforcement of federal immigration laws.

6.    As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants.   As an agent with USPB, my responsibilities include the investigation of possible violations of Immigration and Nationality laws, Title 8 of the United States Code, including alien smuggling in violation of 8 U.S.C. §1324, and related offenses.

7.    I am currently assigned to the Campo Border Patrol Station. My assignment includes investigations related to the entry of illegal aliens and alien smuggling.  In the course of my duties, I have worked as a field agent and observed and recorded movements of individuals illegally entering the United States and of those suspected of smuggling illegal aliens into the United States.  Also, I have interviewed defendants and witnesses involved in the illegal entry into the United States and alien smuggling.  Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of illegal aliens and alien smugglers, with particular emphasis on those who attempt to illegally enter or smuggle illegal aliens into the United States from

1  Mexico within the Southern District of California.

2       8.    Through the course of my training, investigations, and conversations with other
3  law enforcement personnel, I am aware that it is a common practice for alien smugglers to
4  work in concert with other individuals, and they do so by utilizing cellular telephones,
5  pagers and portable radios to maintain communications with co-conspirators in order to
6  further their criminal activities. Typically, "load drivers" transport aliens within the United
7  States in their vehicles and are in telephonic contact with co-conspirators immediately prior
8  to and following the entry of illegal aliens into their vehicle, at which time they receive
9  instructions on where and when to pick up the illegal aliens and where to deliver them.
10 Alien smugglers also use "scout drivers" to check the presence of Border Patrol Agents.
11 For example, prior to the load vehicle picking up illegal aliens, the scout drivers utilize
12 cellular telephones and other digital devices to communicate with the load drivers.

13      9.    It is my experience that alien smuggling generates many types of evidence.
14 Examples of such evidence include United States government documentation evidencing
15 alienage; domestic and foreign correspondence evidencing alien-smuggling arrangements;
16 airline/airfare tickets; names of those arranging alien smuggling; lists or ledgers containing
17 names and numbers of smuggled aliens, along with their destinations and fees paid or to
18 be paid; registrations and titles of vehicles used in the smuggling and transporting of illegal
19 aliens; financial records and bank statements recording the receipt of money from alien
20 smuggling; computers; counter-surveillance equipment and recordings; equipment and
21 devices used to store information; cellular telephones and chargers; telephone tolls of calls;
22 documents and receipts evidencing temporary lodging of illegal aliens; documents showing
23 possession, dominion, and/or control over premises where illegal aliens are secreted
24 pending transportation to other locations, including canceled mail, keys, rent receipts,
25 utility bills, deeds, leases and photographs; property of smuggled aliens in the form of
26 wallets, purses, suitcases, tote bags, backpacks, and clothing; checks, money orders, and
27 money order receipts as well as United States and foreign currency. Based on my training

28

1   and experience, some of this evidence can be contained in cellular phones and digital

2   devices.

3        10.    In preparing this affidavit, I have conferred with other agents and law

4   enforcement personnel who are experienced in the area of alien smuggling investigations,

5   and the opinions stated below are shared by them.  Further, I have personal knowledge of

6   the following facts, or have had them related to me by persons mentioned in this affidavit.

7        11.    Based upon my training and experience as a BPA, and consultations with law

8   enforcement officers experienced in alien smuggling investigations, I am also aware that:

9

10       a.     Alien smugglers will use cellular telephones because they are mobile
                and they have instant access to telephone calls, text, web, and voice
11              messages;

12       b.     Alien smugglers will use cellular telephones because they are able to
13              actively monitor the location of the individuals being smuggled into the
                United States, and to arrange for their transportation further into the
14              United States;

15

16       c.     Alien smugglers and their accomplices will use cellular telephones
                because they can easily arrange and/or determine what time the
17              individuals being smuggled will arrive at predetermined locations;

18
         d.     Alien smugglers will use cellular telephones to direct drivers to
19              synchronize an exact drop off and/or pick up time of the individuals
                being smuggled;
20

21       e.     Alien smugglers will use cellular telephones to notify or warn their
                accomplices of law enforcement activity to include the presence and
22              posture of marked and unmarked units, as well as the operational status
23              of checkpoints and border crossings;

24
         f.     The use of cellular telephones by alien smugglers tends to generate
25              evidence that is stored on the cellular telephones, including, but not
                limited to emails, text messages, photographs, audio files, call logs,
26              address book entries, IP addresses, social network data, and location
27              data.

28
                                            4

1      12.    Subscriber Identity Module (SIM) Cards also known as subscriber identity
2  modules are smart cards that store data for GSM cellular telephone subscribers.  Such data
3  includes user identity, location and phone number, network authorization data, personal
4  security keys, contact lists and stored text messages.  Much of the evidence generated by a
5  smuggler's use of a cellular telephone would likely be stored on any SIM Card that has
6  been utilized in connection with that telephone.

7      13.    Based upon my training and experience as a BPA, and consultations with law
8  enforcement officers experienced in alien smuggling investigations, and all the facts and
9  opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do
10 contain electronic records, phone logs and contacts, voice and text communications, and
11 data such as emails, text messages, chats and chat logs from various third-party
12 applications, photographs, audio files, videos, and location data.  This information can be
13 stored within disks, memory cards, deleted data, remnant data, slack space, and temporary
14 or permanent files contained on or in the cellular/mobile telephone.  Specifically, I know
15 based upon my training, education, and experience investigating these conspiracies that
16 searches of cellular/mobile telephones yields evidence

18     a.    tending to indicate efforts to bring in, transport, and smuggle illegal aliens;

19     b.    tending to identify other facilities, storage devices, or services–such as email
20           addresses, IP addresses, phone numbers–that may contain electronic evidence
             tending to the bringing in, transporting, and/or smuggling of illegal aliens;

22     c.    tending to identify co-conspirators, criminal associates, or others involved in
             the bringing in, transporting, and/or smuggling of illegal aliens;

24     d.    tending to identify travel to or presence at locations involved in the bringing
25           in, transporting, and/or smuggling of illegal aliens, such as residence locations
             associated with the transporting and smuggling of illegal aliens;

26     e.    tending to identify the user of, or persons with control over or access to, the
27           subject phone; and/or

28

1
2

     f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

3

### **FACTS SUPPORTING PROBABLE CAUSE**

4
5
6
7
8
9
10

     14.    On February 7, 2018, I was patrolling the parking lot of the Golden Acorn Casino as part of my interdiction duties. The Golden Acorn Casino is a known landmark to BPAs as a place where load drivers typically stage prior to their smuggling event. The casino is located approximately 20 miles east of the Tecate, California, Port of Entry, and 7 miles north of the international boundary between the United States and Mexico. While conducting activities, I was driving an unmarked agency vehicle and dressed in plain clothes, with my agency badge displayed around my neck.

11
12
13

     15.    At approximately 7:45 a.m., I observed a silver BMW parked, with a male standing outside the driver's door on a cell phone. Records checks of the license plate on the vehicle showed it was registered out of the city of Pomona, California.

14
15
16
17
18
19
20
21
22

     16.    The driver got into the vehicle and left the parking lot, merging onto the Interstate 8 eastbound lanes. I followed in my vehicle, and observed the BMW pull off to the south shoulder of the interstate after a short while. I passed the vehicle and pulled off the interstate, observing the vehicle through my rearview mirror. The vehicle was traveling at a slow rate of speed on the shoulder of the interstate, and stopped at the sign indicating the next exit was Jacumba Hot Springs. After the vehicle stopped, I observed two individuals run from the brush and get into the back seat of the vehicle. The vehicle was only stopped on the side of the interstate for a few seconds, and then re-entered the eastbound lanes of Interstate 8.

23
24
25
26
27

     17.    I continued to follow the vehicle eastbound, as it traveled at speeds exceeding 100 mph. El Centro Border Patrol Agents set up and attempted to get behind the vehicle near the intersection of Interstate 8 and Highway 98, but due to the vehicle's extreme speeds, marked agency vehicles were unable to catch up to initiate a vehicle stop. Near mile marker 17, the vehicle slowed due to heavy traffic and I caught up to it. At

28

1  approximately 8:15 a.m., I activated my emergency lights and sirens. The vehicle yielded
2  near mile marker 16.

3      18.    I approached the passenger side of the vehicle and identified myself as a BPA.
4  The driver, later identified as FERNANDEZ, identified himself as a United States citizen.
5  On two occasions, I asked the individuals in the back seat of the vehicle to state their
6  citizenship. On both occasions, FERNANDEZ interrupted and answered for the
7  individuals, stating the individuals were his friends and were fine. I ordered FERNANDEZ
8  not to answer for the individuals, and again questioned them as to their citizenship. Both
9  individuals, later identified as Ruben Martinez-Cruz and Jose Jacinto Cruz-Cruz, indicated
10  they were citizens of Mexico without proper documentation to be in the United States.
11  FERNANDEZ was arrested and charged by complaint with transportation of certain aliens
12  for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). The **Target Telephones**
13  were both seized from FERNANDEZ at the time of his arrest. The other two individuals
14  were detained as material witnesses.

15      19.    Upon questioning, both Martinez and Cruz stated they entered the United
16  States that morning by climbing up and over the border fence. Martinez indicated they were
17  told to walk north until they got to the freeway, and that someone would pick them up.
18  Martinez indicated that Cruz was in communication via telephone with the smugglers and
19  that a short time after arriving at the designated freeway location, Cruz received a call
20  informing them that a car was nearby to pick them up. The vehicle driven by FERNANDEZ
21  arrived shortly thereafter and Cruz told Martinez it was the vehicle that was picking them
22  up. Both Martinez and Cruz were paying $6,500 to others to be smuggled into the United
23  States and to their final location in Los Angeles.

24      20.    Based upon my experience and investigation in this case, and all the facts and
25  opinions set forth in this affidavit, considering the close proximity in time between
26  Martinez and Cruz's entry into the United States and the time they were picked up by
27  FERNANDEZ, coupled with the fact both FERNANDEZ and Cruz were communicating

28

7

1  with others by telephone before FERNANDEZ picked up the aliens, I believe that
2  FERNANDEZ, as well as other persons as yet unknown, were involved in a conspiracy to
3  bring the aliens into the United States, and transport them within the United States.

4       21.    Based upon my experience and training, and in consultation with other law
5  enforcement officers experienced in alien smuggling investigations, and all the facts and
6  opinions set forth in this affidavit, I also believe FERNANDEZ used the **Target**
7  **Telephones** to communicate and coordinate with co-conspirators regarding the alien
8  smuggling venture, and to otherwise further the conspiracy both inside and outside the
9  United States. Further, I believe that information relevant to the alien smuggling activities
10 of FERNANDEZ and his co-conspirators, such as telephone numbers, made and received
11 calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages,
12 pictures, location data, and other digital information are stored in the memory of the **Target**
13 **Telephones**.

14      22.    Finally, I know that alien smuggling conspiracies require detailed and intricate
15 planning to successfully evade detection by law enforcement.  In my professional training
16 and experience, this requires planning and coordination in the days and weeks and often
17 months prior to the event.  Additionally, co-conspirators are often unaware of the subject's
18 arrest and will continue to attempt to communicate with the subject after the arrest to
19 determine the whereabouts of the individuals being smuggled into the United States.
20 Based on my training and experience, individuals such as FERNANDEZ will attempt to
21 minimize the amount of time they were involved in their smuggling activities and often
22 times are actually involved for weeks and months longer than they claimed to be involved.
23 Given those facts, I respectfully request permission to search the **Target Telephones** for
24 items listed in Attachment B beginning on November 7, 2017, up to and including the
25 entire day of February 7, 2018.

26     //
27     //
28

8

# METHODOLOGY

23.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

24.    Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis.  All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

1 review, and, consequently, may take weeks or months.  The personnel conducting the
2 identification and extraction of data will complete the analysis within ninety (90) days,
3 absent further application to this court.

4 **CONCLUSION**

5       26.    Based upon my experience, training, and consultation with other law
6 enforcement officers experienced in alien smuggling investigations, and all the facts and
7 opinions set forth in this affidavit, I believe there is probable cause to conclude that the
8 **Target Telephones** were used to facilitate the offense of alien smuggling.   The **Target**
9 **Telephones** were likely used to facilitate the offense by transmitting and storing data,
10 which constitutes evidence of violations of 8 U.S.C. § 1324.

11      27.    Because the **Target Telephones** were seized immediately during the
12 investigation of FERNANDEZ's smuggling activities and have been securely stored, there
13 is also probable cause to believe that evidence of the illegal activities committed by
14 FERNANDEZ, as described in Attachment B, continues to exist on the **Target**
15 **Telephones.**

16      //
17      //
18      //
19      //
20      //
21      //
22      //
23      //
24      //
25      //
26      //
27      //
28

28. Therefore, I respectfully request that the Court issue a warrant authorizing Border Patrol Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Telephones**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Lucas C. Waters
U.S. Border Patrol Agent
United States Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS 16th day of April, 2018.

HON. ANDREW G. SCHOPLER
United States Magistrate Judge

11

## ATTACHMENT A

### *DESCRIPTION OF DEVICES TO BE SEARCHED*

      a.    **One (1) Black Samsung Smartphone**
             Model: SM-G550T1
             SN: 354151/08/385854/1

      b.    **One Black LG Smartphone**
             Model LG-VS425LPP
             SN: 712VTNV1982103

Seized from Francisco Fernandez on February 7, 2018, which are currently in the possession of Customs and Border Protection, Asset Forfeiture Office, 3752 Veyer Blvd., San Ysidro, CA 92173, within the Southern District of California.

## ATTACHMENT B

## DESCRIPTION OF PROPERTY/ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 7, 2017, up to and including February 7, 2018:

a.   tending to indicate efforts to bring in, transport, and smuggle illegal aliens;

b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to the bringing in, transporting, and/or smuggling of illegal aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in the bringing in, transporting, and/or smuggling of illegal aliens;

d.   tending to identify travel to or presence at locations involved in the bringing in, transporting, and/or smuggling of illegal aliens, such as residence locations associated with the transporting and smuggling of illegal aliens;

e.   tending to identify the user of, or persons with control over or access to, the subject phone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above;

which are evidence of violations of Title 8, United States Code, Section 1324, including, but not limited to, Section 1324(a)(2)(B)(iii), Bringing in Illegal Aliens without Presentation; Section 1324 (a)(1)(A)(ii) Transportation of Illegal Aliens; 1324(a)(2)(B)(ii), Bringing in for Financial Gain; 1324(a)(1)(A)(v) Conspiracy/Aiding or Abetting.